# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ETHEL L. RODGERS-EACHES,　　　　　　　Case No. 1:20-cv-69
　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　Cole, J.
　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　　vs.

COMMISSIONER OF　　　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　　**RECOMMENDATION**
　　　Defendant.

Plaintiff Ethel L. Rodgers-Eaches brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's statement of errors (Doc. 10) and the Commissioner's response in opposition (Doc.

15).

## I. Procedural Background

Plaintiff protectively filed an application for DIB on August 8, 2017, alleging she became

disabled on February 2, 2017 due to "depression, anxiety, COPD - lft [sic] lung nodules, poor

memory, migraines, fatty liver disease, hypertension, kidney with adenema, thyroid condition,

knee pain, lower back pain, multiple hard defects lumbar region, can't lift no more than 10 lbs."[1]

(Tr. 299). The application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ")

Suzette Knight on September 4, 2018. On November 30, 2018, the ALJ issued a decision

---

[1] Plaintiff amended her alleged onset date of disability to July 1, 2017 at the administrative hearing. (Tr. 15, 43).

denying plaintiff's DIB application.   The Appeals Council denied plaintiff's request for review, making the decision of ALJ Knight the final decision of the Commissioner.

Plaintiff had previously filed applications for DIB and supplemental security income ("SSI") in December 2014, alleging disability since August 23, 2014.  (Tr. 323).  ALJ Maria Nunez issued a decision denying plaintiff's prior applications on February 1, 2017, which became final when the Appeals Council denied plaintiff's request for review on May 15, 2017.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

2

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings.  *Earley v. Commr. of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Commr. of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).  *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing.").  *Drummond* held that "absent changed circumstances," the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings.  126 F.3d at 842. Following the decision in *Drummond*, the Commissioner issued AR 98-4(6), 1998 WL 283902

3

(June 1, 1998), which binds ALJs in states within the Sixth Circuit and requires them to follow

*Drummond*.  The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law. . . .

*Id*., at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which

the decision seeks to protect principles of "consistency between proceedings and finality with

respect to resolved applications."  *Earley*, 893 F.3d at 931.  The Sixth Circuit explained that

when a claimant who has filed a prior application files "a second application for the same period

of time finally rejected by the first application and offers no cognizable explanation for revisiting

the first decision, res judicata would bar the second application."  *Earley*, 893 F.3d 933.  But the

Court also explained that "an individual may file a second application - for a new period of time

- for all manner of reasons," and res judicata would not apply to the second application.  *Id*.

When a claimant seeks disability benefits for a distinct period of time, she can "obtain

independent review" of the application so long as she "presents evidence of a change in

condition or satisfies a new regulatory threshold."  *Id*. at 932.  Principles of consistency and

finality "do not prevent the agency from giving a fresh look to a new application containing new

evidence or satisfying a new regulatory threshold that covers a new period of alleged disability,"

while bearing in mind the record and findings in the prior proceedings.[2] *Id.* at 931.

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2019.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since July 1,
> 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic liver disease,
> degenerative disc disease/lumbar facet arthritis/other unspecified arthropathies,
> diabetes mellitus, obesity, essential hypertension, COPD, depressive bipolar and
> related disorders, anxiety and obsessive compulsive disorders, somatic symptom
> and related disorders (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments
> that meets or medically equals the severity of one of the listed impairments in 20
> CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
> 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the
> [plaintiff] has the residual functional capacity [("RFC")] to perform light work as
> defined in 20 CFR 404.1567(b) except the [plaintiff] can stand and walk for a
> total of two hours in an eight hour workday.  She can occasionally balance,
> stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds.
> [Plaintiff] can occasionally work at unprotected heights or around moving
> mechanical parts.  However, she can never be exposed to dust, odors, fumes, and
> pulmonary irritants, except for those found in an ordinary office setting.  She is
> limited to performing simple, routine, and repetitive tasks that involve no more

---

[2] ALJ Knight applied principles of res judicata and reviewed the record in accordance with the Sixth Circuit's decision in *Earley,* 893 F.3d at 929.  She found that ALJ Nunez's prior decision, which covered a distinct time period, was res judicata and there was no basis to reopen plaintiff's prior applications; therefore, ALJ Knight addressed only the unadjudicated period beginning on February 2, 2017.  (Tr. 15).  In adjudicating plaintiff's subsequent disability claim for the unadjudicated period, ALJ Knight acknowledged she was bound to consider certain findings made by ALJ Nunez in her prior decision and to give those findings "appropriate weight in light of all relevant facts and circumstances," such as the likelihood of a change in the severity of plaintiff's medical condition and the extent to which evidence not considered in connection with the prior claims provided a basis for a different finding for the unadjudicated period.  (Tr. 16).  Plaintiff does not allege that ALJ Knight erred in applying principles of res judicata when evaluating plaintiff's DIB claim for the unadjudicated period.

than frequent interaction with supervisors and co-workers, and no more than occasional interaction with the public. She is limited to tolerating few changes in a routine work setting. In addition to normal breaks, she will be off task five percent of the time in an eight hour workday.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]

7. The [plaintiff] was born [in] . . . 1969 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-30).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[3] Plaintiff's past relevant work was as a registered nurse, a nurse supervisor, and a hospice nurse, all light to medium exertion, skilled positions. (Tr. 29, 78-79).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (46,000 jobs in the national economy); stacker/packer (17,000 jobs in the national economy); and inspector (13,000 jobs in the national economy). (Tr. 30, 80-82).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

Plaintiff alleges as her only assignment of error that the ALJ erred by "fail[ing] to explain why [plaintiff's] assistive device was not medically necessary," despite "documentation of this

device being very prevalent throughout the record[.]" (Doc. 10 at PAGEID 7). Plaintiff

acknowledges that to establish a hand-held assistive device is "medically required," the record

must include "medical documentation" that (1) establishes the need for a hand-held assistive

device to aid in walking or standing, and (2) describes the circumstances in which it is needed.

(*Id*., citing SSR 96-9p). Plaintiff contends that a prescription is not necessary to prove that a

hand-held assistive device is required. (*Id*., citing cases). Plaintiff notes that the ALJ mentioned

her use of a cane, but the ALJ never stated that the device "was not medically necessary" and did

not explain that "there was no evidence to support [plaintiff's] use of an assistive device." (*Id*. at

PAGEID 8). Thus, plaintiff alleges it is not clear whether the ALJ "properly considered"

whether plaintiff's cane should have been included in her RFC. (*Id*.). The Commissioner argues

in response that the ALJ did not err by omitting plaintiff's alleged need for a cane from the RFC,

or by failing to explain her reasons for doing so, because the record does not include medical

documentation showing that a cane was medically required. (Doc. 15).

In her written decision, the ALJ noted that plaintiff alleged she uses a cane to assist her

with ambulation, due to lower extremity numbness, and that the cane was not prescribed for

plaintiff but was purchased by her sister. (Tr. 24). The ALJ did not further discuss plaintiff's

use of a cane, and she did not include the need to use a cane as a limitation in plaintiff's RFC.

The Court finds that the ALJ did not commit reversible error by either failing to incorporate the

need for a cane into the RFC or failing to explain the reasons for her decision.

### 1. *The ALJ did not err by failing to incorporate the need to use a cane into the RFC*

A claimant's RFC is an assessment of the most a claimant "can still do despite limitations." 20 C.F.R. § 404.1545(a)(1). In formulating the RFC, the ALJ must consider all of the claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2), (3). The claimant is responsible for providing the medical evidence that goes into the RFC finding. *Perry v. Berryhill,* No. 1:16-cv-2970, 2018 WL 1393275, at *3 (N.D. Ohio Mar. 20, 2018) (citing 20 C.F.R. § 404.1545(a)(3)). The RFC determination itself is reserved for the ALJ. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Perry*, 2018 WL 1393275, at *3 (citing 20 C.F.R. § 404.1546(c); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)).

The ALJ is not required to incorporate use of a cane into the RFC unless the cane is medically required, in which case the cane is considered a limitation on a claimant's ability to work. *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Baker v. Commr. of Soc. Sec.,* No. 2:19-cv-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020). Social Security Ruling 96-9p explains when a cane or other hand-held assistive device is "medically required" and the implications of that medical need for a claimant's RFC:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  The "burden to prove through clinical

evidence that a cane is medically required" is on the claimant.  *Baker,* 2020 WL 2213893, at *7

(quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2

(N.D. Ohio Aug. 1, 2013)).

        Plaintiff testified at the ALJ hearing that she uses a cane because she cannot feel the

outside of her left leg, her left foot, or the toes on her right foot, and she falls.  (Tr. 58-59).

Plaintiff claims that there is "sufficient evidence [in the record] to at least raise the probability

that [she] requires an assistive device to ambulate."  (*Id*. at PAGEID 9).  Plaintiff contends that

several providers noted in their records that she reported using a cane or that they observed her

"using the assistive device at various appointments."  (Doc. 10 at PAGEID 8-9).  Plaintiff asserts

that no provider indicated the device was not necessary or recommended against use of the

device.  (*Id*. at PAGEID 9).  Plaintiff also contends that the records document her back

impairment and resulting limitations, right ankle pain, and lower extremity pain and weakness,

which support her use of a cane.  (*Id*.).  Plaintiff argues this is true even though no medical

provider prescribed the cane for her.  (*Id*. at PAGEID 8).

        The evidence plaintiff cites to show the ALJ was bound to include her use of a cane in the

RFC is not adequate "medical documentation" to establish that her use of a cane was "medically

required."  *See* SSR 96-9p, 1996 WL 374185, at *7.  According to the record, plaintiff saw

Heather Brown, PA-C, at Advanced Spine and Pain for her chronic pain on December 5, 2016.

(Tr. 1367-71).  Ms. Brown's treatment notes do not reflect that plaintiff was using a cane at that

time.  Plaintiff complained of chronic pain related to a fall when she was 18 years old, which had

10

flared up a few years earlier. She described the pain as lumbar spine pain down to her buttocks and legs, "electrical shocks" throughout her legs, and numbness/tingling into both legs and toes. (Tr. 1367, 1369). Plaintiff was taking Oxycodone for the pain, which helped, and she had received injections over the past four months, which had provided only minimal relief. (Tr. 1369). Ms. Brown noted that a recent MRI and X-rays of plaintiff's spine showed spondylolisthesis of L3-4 with mild instability and degenerative disc disease with facet changes at L4-S1. (*Id.*). Plaintiff had been seen by a neurosurgeon, who informed her she was not a surgical candidate at that time. (*Id.*). Plaintiff denied recent falls. (Tr. 1370). On physical examination, range of motion was slightly reduced in the hips and hamstrings. (*Id.*). Mobility and balance were "fair." (*Id.*). Ms. Brown diagnosed plaintiff with radiculopathy in the lumbar region, myalgia, chronic pain syndrome, migraine, unspecified and not intractable, thoracic spine pain, and sprain of unspecified ligament in the right ankle. (*Id.*). The plan was to continue plaintiff on "OxyCotin," Oxycodone, and Flexeril; start Phenergan for intermittent nausea caused by her medications; and have plaintiff inquire into whether she could afford physical therapy. (*Id.*).

Plaintiff returned to Ms. Brown on January 2, 2017 for follow-up and medication refills. (Tr. 1374-78). Plaintiff denied recent falls. (Tr. 1377). Ms. Brown's physical examination findings and diagnosis were unchanged. (*Id.*). Ms. Brown recommended that plaintiff continue her medications, stop physical therapy due to lack of benefit and the cost, and "continue HEP [home exercise program]." (Tr. 1378). Plaintiff was to follow up with a neurosurgeon. (*Id.*).

11

Ms. Brown's treatment records from plaintiff's next follow-up visit on January 30, 2017 again note that plaintiff denied recent falls.  (Tr. 1383).  There is no indication in the treatment notes that plaintiff was using a cane at that time.  (Tr. 1380-84).

Ms. Brown's treatment notes dated February 27, 2017, include the first mention of plaintiff's use of a cane.  (Tr. 1386).  Ms. Brown reported that plaintiff noted "ongoing LBP [lower back pain] - Left leg Numbness in the distal lateral tibia and falls - despite cane use."  (Tr. 1387).  The "Review of Systems" section of the notes continued to state that plaintiff "denied . . . recent [f]alls."  (Tr. 1389).  Ms. Brown's physical examination findings and diagnosis were unchanged.  (*Id*.).  Ms. Brown continued plaintiff's medications, and she recommended that plaintiff stop physical therapy due to lack of benefit and the cost and that plaintiff "continue HEP, cane - fall precautions."  (Tr. 1390).  Ms. Brown reported that plaintiff was to follow up with the neurosurgeon the next day, and she indicated he might order an EMG.  (*Id*.).  Ms. Brown reported that plaintiff had an MRI of the lumbar spine on February 18, 2017, which showed degenerative disc disease with "varying degree of stenosis" at L3-S1, which was not significantly changed since 2016 according to the radiologist,[5] and "disk bulge and facet changes more to the left and right" at L4-5, which was "consistent with [l]eft leg weakness and numbness."  (*Id*.).

---

[5] A February 2016 MRI of plaintiff's lumbar spine showed mild multilevel degenerative disc disease, facet arthritis, and herniations at T11-T12 and L4-5, with no significant spinal stenosis and mild narrowing at L4-5 bilaterally.  (Tr. 539).  Neurosurgeon Brian Cameron, M.D., reviewed imaging results in June 2016, and his impression was a bilateral pars defect at L3 with no clinically significant instability.  (Tr. 477-78).  He opined there was "no good indication for surgical intervention in the absence of any instability."  (*Id*.).

In March, April, May, June, and July 2017, Ms. Brown's notes continued to reflect that plaintiff reported "ongoing LBP [lower back pain] - Left leg Numbness in the distal lateral tibia and falls - despite cane use."  (Tr. 1392, 1398, 1404, 1409, 1415).  The "Review of Systems" section in the treatment notes for each of these dates includes the notation that plaintiff denied recent falls.  (Tr. 1394, 1400, 1406, 1411, 1417).  The July 2017 notes also reflect that plaintiff was "using a cane regularly."  (Tr. 1415).

Plaintiff saw Kathleen Gorham at the Advanced Spine and Pain Center in August, September, October, and December 2017 and January/February 2018 for follow-up and medication refills.  (Tr. 1420-25, 1426-1435, 1436-1445, 1893-1900, 1901-1908, 1909-1916).  Her treatment notes appear to incorporate Ms. Brown's prior notes largely verbatim, including notes related to plaintiff's reports that she was "using a cane regularly"; she denied recent falls; and she was experiencing "ongoing LBP [lower back pain] - Left leg Numbness in the distal lateral tibia and falls - despite cane use."  (*Id.*).

In May 2017, Dr. Charles Leiner, M.D., plaintiff's primary care provider at VCU Health Systems, made a physical examination finding that plaintiff "[u]ses cane for ambulation."  (Tr. 957).  James B. Wade, Ph.D., who performed a neuropsychological consultative evaluation in July 2017, reported that plaintiff "ambulated using a single-point cane but no other abnormal motor behavior was observed."  (Tr. 722).  Dr. Vipul Mangal, M.D., a physician with the Advanced Spine and Pain Center, noted on physical examination in April, May, and June 2018 that plaintiff "[u]ses cane to ambulate."  (Tr. 2218, 2228, 2239).  He also reported tenderness to palpation of the lumbar facets and the right lumbar paraspinals, pain with lumbar flexion and

13

lateral rotation, limited range of motion, decreased sensation in the right "LLE," full strength bilaterally, and positive straight leg raise test on the right. (Tr. 2239-40). He treated plaintiff with opioids and other medications. (Tr. 2240).

This evidence shows that plaintiff reported to medical sources that she used a cane, and she was occasionally observed using a cane. Between late February 2017 and February 2018, the treatment records consistently note that plaintiff complained of falls "despite cane use." Further, plaintiff was observed using a cane on several occasions in 2017 and 2018. (Tr. 722, 957, 2218, 2228, 2239). ALJ Knight acknowledged plaintiff's allegations regarding her use of a cane, stating in her written decision: "She uses a cane to assist with ambulation, as she has fallen from lower extremity numbness. The claimant [sic] was not prescribed but purchased by her sister." (Tr. 24). The ALJ did not err by failing to go further and make more detailed findings as to whether plaintiff's use of a cane was "medically necessary." "[I]ndications in the medical records that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required." *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017), *report and recommendation adopted sub nom. Parrish v. Commr. of Soc. Sec.*, 2017 WL 2720332 (N.D. Ohio June 23, 2017). Even though plaintiff can show that she uses or has used a cane, this does not satisfy the medical documentation requirement; she must provide evidence that she required the use of a cane and the circumstances under which she needed to use it. *Krieger v. Commr. of Soc. Sec.,* No. 2:18-cv-876, 2019 WL 1146356, at *6 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted,* 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (citing SSR 96-9P, 1996 WL 374185, at *7). *See also Strain,* 2013 WL 3947160, *2 (the

plaintiff failed to "meet her burden to demonstrate through the use of clinical evidence that the cane is necessary"); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sept. 25, 2017) (ALJ's conclusion that plaintiff failed to establish need for a cane was reasonable, even though she testified she was prescribed a cane and documentation showed she received a cane, given there was no specific evidence in the record establishing that she needed the cane and no medical documentation describing circumstances in which a cane was required); *Ross v. Comm'r of Soc. Sec.*, No. 2:17-cv-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (ALJ decision that the claimant did not medically require a cane was substantially supported where the records regarding her use of a cane were inconsistent, she had been observed ambulating normally, and no doctor opined that she needed a cane and circumstances in which a cane was required).  The record in this case does not include the necessary medical documentation.  Plaintiff has not pointed to "any medical documentation establishing that a cane is medically necessary or describing the circumstances for which it is needed, as SSR 96-P requires."  *Krieger*, 2019 WL 1146356, at *6.  She has not carried her burden "to demonstrate through clinical evidence that a cane is medically necessary."  *Strain*, 2013 WL 3947160, *2; SSR 96-9P, 1996 WL 374185, at *7.  Her reports to her providers that she was using a cane, and observations of her using a cane, do not suffice.

Nor does Ms. Brown's recommendation that plaintiff "continue HEP, cane - fall precautions" (Tr. 1390) satisfy the medical documentation requirement.  "[A] suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on . . . her own" does not satisfy the medical documentation requirement of SSR 96-9p.  *Perry,*

2018 WL 1393275, at *4 (citing *Parrish*, 2017 WL 2728394).  *See also Scroggins*, 2017 WL 4230650, at *4 (the ALJ was reasonable in concluding that the claimant failed to establish that a cane was medically necessary when no medical source opined that she needed the cane).  Thus, in *Perry*, the medical documentation requirement was not satisfied where a treating doctor's note "state[d] only that he encouraged Plaintiff to continue to regularly use the cane that Plaintiff bought himself."  *Perry*, 2018 WL 1393275, at *4.  As in *Perry*, Ms. Brown's recommendation that plaintiff continue with a home exercise program and use of her cane, which plaintiff purchased on her own, does not satisfy the medical documentation requirement.  The recommendation was not an opinion that plaintiff needed a cane, and the records do not describe the circumstances in which plaintiff needed a cane.  Specifically, plaintiff has not pointed to any other information in the treatment or other records that indicate whether she needed a cane "to aid in walking or standing"; whether she needed to use the cane "all the time, periodically, or only in certain situations"; whether the cane was necessary only for traveling certain distances or on specific types of terrain; and "any other relevant information."  SSR 96-9p, 1996 WL 374185, at *7.

The record does not establish that plaintiff's cane was medically required or the specific circumstances under which the cane was needed.  Substantial evidence supports the ALJ's decision to omit the need to use a handheld assistive device from the RFC finding.

### 2. The ALJ's failure to discuss plaintiff's alleged medical need to use a cane

Plaintiff claims that the evidence, which is sufficient to support her "continued use of an assistive device to ambulate," coupled with the ALJ's "failure to even address the medical

necessity of the device," leave the ALJ's decision unreviewable. (*Id.* at PAGEID 10). Plaintiff claims it is impossible to discern from the ALJ's decision whether she is able to "sustain competitive employment if she was required to use the cane to ambulate." (*Id.* at PAGEID 10). But the ALJ was not bound to evaluate in her written decision how plaintiff's use of a cane impacted her ability to perform work activities in this matter. An "ALJ is not required to 'discuss every piece of evidence in the record to substantiate'" her decision. *Baker*, 2020 WL 2213893, at *6 (quoting *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). As discussed *supra*, the ALJ noted in her written decision plaintiff's allegations that she used a cane and she was observed using a cane. (Tr. 24). These reports and observations of plaintiff's use of a cane are reflected in the medical records. Plaintiff has not pointed to additional records that show the cane she reported using and was observed using was "medically required." *See* SSR 96-9p, 1996 WL 374185, at *7. No medical provider offered an opinion or otherwise indicated that she needed to use the device and in what circumstances.

Because plaintiff has not pointed to medical documentation in the record that shows her cane was medically required, any error the ALJ committed by failing to more thoroughly evaluate plaintiff's use of a cane was harmless error. *See Clevenger v. Comm'r of Soc. Sec.,* No. 2:19-cv-4512, 2020 WL 2092387, at *9 (S.D. Ohio May 1, 2020) (ALJ's failure to consider whether the plaintiff required an assistive device to ambulate was harmless error where the plaintiff was prescribed a cane only in response to her self-report of difficulty, which "fell short of the medical documentation establishing the need for a hand-held assistive device" under SSR

17

96-9p); *Elliott v. Comm'r of Soc. Sec.*, No. 2:19-cv-3445, 2020 WL 746597, at *9 (S.D. Ohio

Feb. 14, 2020) ("even if the omission of any cane-related discussion was error, it was harmless

error"; doctor's opinion that the plaintiff occasionally required the use of a cane on uneven

surfaces was based on the plaintiff's self-report, which fell short of the medical documentation

required).  Remand for a more substantive analysis and explanation of the alleged medical need

for a cane would be pointless because "even a more substantive inquiry would yield the same

result: that [plaintiff] cannot demonstrate that she needs, as a matter of medical necessity," to use

a cane.  *Strain,* 2013 WL 3947160, at *3.[6]

Plaintiff's assignment of error should be **OVERRULED**.

## IT IS THERFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date:  1/16/2021

Karen L. Litkovitz
United States Magistrate Judge

---

[6] In addition, assuming the record included medical documentation to show that the use of a cane was medically required, plaintiff has not pointed to any evidence that indicates she would be unable to perform the sedentary jobs identified by the ALJ.  (Tr. 29-30; *see* Tr. 80-81).  When given an opportunity to question the VE at the ALJ hearing, plaintiff's counsel did not ask whether the need to use a cane would impact the hypothetical individual's ability to perform the sedentary jobs that the VE identified and which the ALJ found plaintiff capable of performing.  (Tr. 88-89).

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ETHEL L. RODGERS-EACHES,               Case No. 1:20-cv-69
      Plaintiff,                           Cole, J.
                                         Litkovitz, M.J.

        vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

19